## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| **RENEISHA KNIGHT** | **: CIVIL ACTION** |
|---|---|
| | : |
| **v.** | : |
| | **: NO. 17-3118** |
| **MIDLAND CREDIT MANAGEMENT** | : |
| **INC.** | : |

### MEMORANDUM

**KEARNEY, J.**                                                                                            **April 5, 2019**

A debt collector's letter demanding payment must be capable of being understood by the least sophisticated debtor under the Fair Debt Collection Practices Act as interpreted by our Court of Appeals.      When the debt collector sends the same language to thousands of debtors in Philadelphia County, it runs the risk the identical language may allow us to certify her case as a class action under the Fair Debt Collection Practices Act. After discovery and guided by our Court of Appeals' findings of ambiguity in this same collection language, we today grant the debtor's motion for partial summary judgment on liability for violating the Fair Debt Collection Practices Act.      We also grant the debtor's narrowed motion for class certification.      We now proceed into discovery on the amount of damages available to the certified class of Philadelphia County debtors who received the identical language from the debt collector.

### I.      Undisputed facts.[1]

Reneisha Knight used her Capital One Bank credit card to purchase groceries and home items.[2]   She did not pay back the credit card in full.   Capital One Bank sold her debt obligation to Midland Funding LLC ("Midland Funding").   Its affiliate, Midland Credit Management ("Midland Credit"), attempted to collect this debt.   On July 20, 2016, Midland Credit sent her a letter

concerning her outstanding debt. In its July 20, 2016 letter, Midland Credit listed Ms. Knight's outstanding balance, her account number, and the original creditor Capital One. Midland Credit also offered her options to resolve the debt:

> Did y u forg t somethi g?
>
> We can't change the past, but we can help with your future.
>
> Reneisha L Branch, mistakes can happen to anyone. Midland Credit Management believes that everyone deserves a second chance. Call (800) 282-2644 or visit us online at www.midlandcreditonline.com by 08-19-2016 to accept one of these discounts.
>
> **We are offering you 40% OFF your balance to help you eliminate your debt while saving money.**
>
> Midland Credit Management will help you put this debt burden behind you. Call us today to pay off your account, and regain your financial free-dom!
>
> **After receiving your final payment, we will consider the account paid\*.**
>
> \* If you pay your full balance, we will report your account as **Paid in Full**. If you pay less than your full balance, we will report your account as **Paid in Full for less than the full balance**.[3]

Midland Credit offered three options for resolving the debt: (1) Option 1 of "40% Off, Payment Due Date: 8-19-2016"; (2) Option 2, "20% OFF, Over 6 months"; (3) Option 3 of "Monthly Payments As Low As: $50 per month."[4]

Ms. Knight alleges this language would confuse, deceive, or mislead the least sophisticated debtor. She sues Midland Credit for violating Sections 1692e and 1692f of the Fair Debt Collection Practices Act. Ms. Knight alleges Midland Credit sent standardized letters with the same violating language to approximately 3,489 consumers in Philadelphia County owing a debt to Capital One Bank. She sues on behalf of herself and a class of similarly situated consumers who received Midland Credit's standardized letter.

2

## II.    Analysis.[5]

The parties proceeded through discovery and now move for summary judgment on Ms. Knight's Section 1692e claims. Ms. Knight moves for class certification under Federal Rule of Civil Procedure 23.[6]

Ms. Knight moves for summary judgment arguing three elements of Midland Credit's letter violate Section 1692e of the Act: (1) Midland Credit's offer to "report" payment of her debt, (2) when Midland Credit will report her account as "Paid in Full" and "Paid in Full for less than the full balance," and (3) the difference between "Paid in Full" and "Paid in Full for less than the full balance."

Midland Credit moves for summary judgment arguing Ms. Knight fails to establish its letter violates Section 1692e. Midland Credit argues (1) its offer to "report" payment is not false, deceptive or misleading; (2) Option 3 in Midland Credit's letter is not false, deceptive, or misleading; (3) when Midland Credit reports an account as "Paid in Full" and "Paid in Full for less than the full balance" is not false, deceptive, or confusing; and (4) Midland Credit does not offer credit reporting benefits in its letter with the language "We can't change the past, but we can help with your future."

In accompanying Orders, we grant Ms. Knight's motion for summary judgment, deny Midland Credit's motion for summary judgment, and grant Ms. Knight's motion for class certification.

### A.    We grant Ms. Knight summary judgment for her Section 1692e claims.

Ms. Knight moves for summary judgment arguing portions of Midland Credit's July 20, 2016 letter violate the Fair Debt Collection Practices Act. Midland Credit also moves for summary judgment arguing the letter does not violate the Act.

3

To establish a claim under the Act, Ms. Knight must prove "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [the Act] defines it, and (4) the defendant has violated a provision of the [the Act] in attempting to collect the debt."[7] The parties do not dispute the first two elements. Midland Credit argues Ms. Knight fails to establish the last two elements. We address each of the disputed elements in turn.

### 1. Ms. Knight establishes Midland Credit attempted to collect a "debt" as defined in the Act.

Ms. Knight argues she establishes Midland Credit attempted to collect as "debt" as defined in the Act. Midland Credit argues we should grant it summary judgment since Ms. Knight fails to establish she owed a debt. Congress defines "debt" in the Act as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."[8]

Midland Credit argues the evidence Ms. Knight cites in her Statement of Undisputed Material Facts does not establish she owed a "debt" as defined in the Act. In her Statement of Facts, Ms. Knight states she "is a consumer as defined by 15 U.S.C. 1692a and the debts at issue in this case were credit card debt from Capital One Bank, N.A., which were incurred for a personal basis."[9] She cites to Midland Credit's July 20, 2016 letter, showing she owed her debt to Capital One.[10] She also cites to a declaration from her counsel containing no mention of the nature of her debt.[11] She also cites to Midland Credit's response to her interrogatories. She served interrogatories on Midland Credit requesting (1) the identity of the original creditor, (2) the nature of the goods and services purchased, (3) the amount sought when Midland Credit sent the letter, and (4) the amount owed on the date Ms. Knight filed her lawsuit.[12] Midland Credit responded it "is not aware

4

of the nature of the goods or services purchased by [Ms. Knight] giving rise to her valid and delinquent debt obligation[.]"[13] We agree with Midland Credit this evidence does not establish she owed a "debt."

Ms. Knight cites her October 30, 2017 responses to Midland Credit's interrogatories to establish she owed a "debt" as defined in the Act. Midland Credit served interrogatories on Ms. Knight: "Please state all facts supporting your allegation in paragraph 7 of the Amended Complaint that the 'personal bill was a debt incurred for personal, family or household purposes and not for business purposes.'"[14] Ms. Knight responded, "I used the card to purchase items for my home, including groceries."[15] Midland Credit does not dispute her October 30, 2017 response, nor does it provide evidence contradicting her response.

Ms. Knight establishes Midland Credit attempted to collect a "debt" as defined in the Act. We acknowledge "[t]here is cause for concern where a movant presents new arguments or evidence for the first time in a summary judgment reply brief, particularly if the District Court intends to rely upon that new information in granting summary judgment to the movant."[16] But Ms. Knight's evidence is not new—she attaches her verified October 30, 2017 response to Midland Credit's interrogatories. Ms. Knight argues she failed to include this evidence in her Motion because she believed Midland Credit "would not seriously dispute Plaintiff's verified discovery responses."[17] Midland Credit does not dispute it possessed Ms. Knight's answers to its interrogatories and cannot credibly argue it did not have access to this evidence. Ms. Knight's verified interrogatory responses do not constitute "new evidence." Ms. Knight establishes Midland Credit attempted to collect a "debt" as defined in the Act.

### 2. Ms. Knight establishes Midland Credit violated Section 1692e of the Act.

Having established the first three elements of her claim, Ms. Knight argues she satisfies the final element because portions of Midland Credit's July 20, 2016 letter violate Section 1692e of the Act. Midland Credit argues Ms. Knight fails to establish it violated the Act.

Under Section 1692e, Congress prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."[18] In particular, Congress prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[19]

We apply the "least sophisticated debtor" standard to Ms. Knight's claims under Section 1692e of the Act. The "least sophisticated debtor" standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor."[20] This standard "protect[s] the gullible as well as the shrewd."[21] But it also "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."[22]

Our Court of Appeals held the "least sophisticated debtor" standard requires an objective test: "The standard is an objective one, meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be."[23]

We ask "whether the objective least sophisticated debtor would be deceived or misled by a debt collector's statement in a communication."[24] "A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate."[25]

In applying the "least sophisticated debtor" standard, the plaintiff must also show a false statement is "material" to be actionable under the Act. A statement is "material" if "it is capable of influencing the decision of the least sophisticated debtor."[26] "[T]he materiality requirement,

6

correctly applied, effectuates the purpose of the [the Act] by precluding only claims based on hypertechnical misstatements under § 1692e that would not affect the actions of even the least sophisticated debtor."[27]

### a. We reject Midland Credit's argument it did not violate the Act because its letter did not actually confuse Ms. Knight.

Before addressing language in the letter, Midland Credit argues the record shows the July 20, 2016 letter did not confuse Ms. Knight. But she need not show the letter confused her. The "least sophisticated debtor" standard is an objective standard, meaning "the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be."[28]

Even if Ms. Knight knew the meaning of the letter—which she seemingly did, as she sought the advice of a credit counselor—she need only prove the least sophisticated debtor would be confused. "[T]he [the Act] enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others."[29] In this instance, Ms. Knight brings a claim under the Act on behalf of potential class members who received Midland Credit's letter. We cannot grant Midland Credit summary judgment on the basis the collection letter did not deceive, confuse, or mislead Ms. Knight.

### b. Midland Credit's use of the word "report" would deceive the least sophisticated debtor.

Ms. Knight argues the use of the word "report" is deceptive under Section 1692e since Midland Credit does not state to whom it will "report," whether it will report to credit reporting agencies, the original creditor, or both.[30] Midland Credit argues the language does not violate

7

Section 1692e since the least sophisticated debtor could only read "report" as applying to credit reporting agencies.

In its July 20, 2016 letter, Midland Credit represents "[i]f you pay your full balance, we will report your account as Paid in Full. If you pay less than your full balance, we will report your account as Paid in Full for less than the full balance."[31]

Our Court of Appeals explained Ms. Knight's interpretation of the word "report"—report the payment to credit reporting agencies, the original creditor, or both—is "not bizarre or idiosyncratic" and "the least sophisticated debtor could reasonably believe that Midland would report the payment to the debtor's original creditor, the credit reporting agencies, or both."[32] The court also held such language is material since "the entity to whom payment is reported can impact a debtor's decision to pay."[33]

While we acknowledge it may not be the most appropriate reading of the letter, the least sophisticated debtor would be confused as to whether Midland Credit would report the account to the original creditor, a credit reporting agency, or both. Midland Credit admits it only reports a debtor's account to credit reporting agencies, not the original creditor.[34] But Midland Credit does not affirmatively state in the letter it only reports to credit reporting agencies. Thus, the least sophisticated debtor has no way of knowing to whom Midland Credit reports. Since the least sophisticated debtor could reasonably interpret "report" in multiple ways, at least one of which is inaccurate, we find the word "report" in the letter deceptive. We also find the term material. The least sophisticated debtor may decide not to pay if she thinks Midland Credit will only report to the original creditor. We agree with our Court of Appeals Midland Credit's reporting practice could influence the least sophisticated debtor's decision to pay.

8

Midland Credit argues the least sophisticated debtor could only interpret "report" as referring to a credit reporting agency. Midland Credit cites the Stipulated Facts section of the parties' Rule 26 Report: "The terms 'Paid in Full' and 'Paid in Full for less than full balance' are terms of art in the credit reporting industry."[35] Thus, Midland Credit argues such language did not confuse Ms. Knight. But a set of stipulated fact to narrow the issues for discovery does not mean the term "report" would not confuse the objective least sophisticated debtor. While industry members may understand this language, we cannot say the least sophisticated debtor would understand.

Midland Credit's corporate designee testified it does not report to the original creditor, but we are not concerned with Midland Credit's actual practices. We ask what the least sophisticated debtor would believe. Midland Credit concedes Ms. Knight "is correct that the letter does not specify to whom [Midland Credit] will 'report' the account."[36] Thus, from the face of the letter, the least sophisticated debtor cannot determine to whom Midland Credit reports. Midland Credit's after-the-fact deposition testimony concerning its actual practices does not negate a finding language in the letter would deceive the least sophisticated debtor.

Midland Credit argues Ms. Knight fails to adduce evidence establishing the July 20, 2016 letter would confuse the least sophisticated debtor as to whom Midland Credit would report the account. Midland Credit cites the court of appeals' decision in *Pettit v. Retrieval Masters Creditor Bureau, Inc.*[37] In *Pettit*, the plaintiff sued a debt collector under the Act arguing its use of name "Retrieval Masters Creditors Bureau" in a collection letter would deceive unsophisticated debtors into thinking it was a credit bureau rather than a debt collector.[38] The court of appeals held the plaintiff could not establish a violation under the Act because she failed to offer sufficient evidence

9

to create a genuine issue of fact, explaining the plaintiff "must do more than merely speculate about how a naïve debtor would interpret the letter."[39]

The court of appeals' decision in *Pettit* is not applicable. First, the Court of Appeals for the Seventh Circuit applied the "unsophisticated debtor" standard and rejected the "least sophisticated debtor" standard, explaining a court should not place the hypothetical debtor used to determine violations on "the very last rung on the sophistication ladder."[40] Second, the court of appeals in an earlier case explained "[w]hether a given message is confusing is . . . a question of fact, not of law or logic."[41] Under the law of our Circuit, the question of whether language in a collection letter would confuse the least sophisticated debtor is a question of law.[42] The parties do not dispute whether Ms. Knight received the letter but only dispute whether the language in the letter would confuse the least sophisticated debtor.

We resolve this question as a matter of law. Midland Credit's use of the word "report" would confuse the least sophisticated debtor, who would be confused as to whether Midland Credit would report the account to the original creditor, the credit reporting agency, or both. Midland Credit only reports a debtor's account to credit reporting agencies, not the original creditor.[43] As the term the least sophisticated debtor could reasonably interpret "report" in multiple ways, at least one of which is inaccurate, the use of "report" is deceptive.

Midland Credit violates Section 1692e of the Act with its use of the word "report" in its letter.

      **c.    Midland Credit's letter would deceive the least sophisticated debtor as to when it will report "Paid in Full" and "Paid in Full for less than the full balance."**

Ms. Knight argues Midland Credit's letter would deceive the "least sophisticated debtor" as to when Midland Credit would report her account as "Paid in Full" and "Paid in Full for less

than the full balance." Since Midland Credit offers Ms. Knight "one of these discounts" and lists three "Options," the least sophisticated debtor would conclude Midland Credit presents a settlement offer in Option 3. Midland Credit admits Option 3 provides payment of the debt in full by way of monthly payments of fifty dollars.[44]

Our Court of Appeals held Midland Credit's July 20, 2016 letter could mislead the least sophisticated debtor as to when Midland Credit would report the account as "Paid in Full" and "Paid in Full for less than the full amount":

Given that the Letter encourages the debtor to accept "one of these discounts" and fails to unequivocally state that Option 3 is not a discount but an option to pay the full account balance, the least sophisticated debtor reading the entire Letter could reasonably understand Option 3 to be a settlement option. Accordingly, the Letter may mislead the least sophisticated debtor with respect to whether "Paid in Full" instead of "Paid in Full for less than the full balance" will be reported.[45]

Our Court of Appeals also found this ambiguity material, explaining it "may affect whether a debtor makes a payment and which option he or she chooses."[46]

Midland Credit argues Ms. Knight's argument fails because she posits the least sophisticated debtor would read portions of the letter in isolation. For example, Ms. Knight argues because Option 3 is ambiguous, the least sophisticated debtor might assume Midland Credit would report "Paid in Full" if the debtor accepts Option 1, and would report "Paid in Full for less than the full balance" for Options 2 and 3. Midland Credit argues this interpretation makes no sense. It argues she cannot read Option 1 and then jump to the footnote without reading the sentence preceding the footnote reference: "After receiving your final payment, we will consider the account paid*." Midland Credit argues considering the footnote text and the sentence preceding the footnote reference, the letter in its entirety would not confuse the least sophisticated debtor.

We agree with our Court of Appeals' assessment. Since Midland Credit invites Ms. Knight to accept one of "these discounts" without explaining Option 3 invites full payment, the least

11

sophisticated debtor could reasonably read Option 3 as a settlement offer. The least sophisticated debtor then, assuming Midland Credit offers settlements with Options 1, 2, and 3, would be confused as to when Midland Credit would report the account as "Paid in Full." The least sophisticated debtor could reasonably conclude it would report the account as "Paid in Full" if she accepted Option 1 since in the body of the letter, Midland Credit offers a forty-percent discount to "eliminate" her debt.[47] Since the least sophisticated debtor could read Option 3 as a settlement offer, she could read "Paid in Full for less than the full balance" as applying to all three Options. But Midland Credit concedes Option 3 is a path to full payment.[48] Thus, Midland Credit's July 20, 2016 letter is open to multiple interpretations, one of which is inaccurate. We agree with Ms. Knight the letter would confuse the "least sophisticated debtor" as to when Midland Credit reports the account as "Paid in Full" and "Paid in Full for less than the full balance." We also find the language material since the least sophisticated debtor would be concerned as to how Midland Credit reports its account. Depending on whether the least sophisticated debtor interprets Option 3 as a settlement offer or path to full payment, she may or may not choose Option 3 based on her concern about how Midland Credit will report.

Midland Credit argues ambiguity as to when it would report as "Paid in Full" and "Paid in Full for less than the full balance" is not material since Ms. Knight testified "no matter what the letter said, she was not making a payment on this account on the advice of her credit counselor."[49] But Ms. Knight need not show she considered the language material. She need only show the least sophisticated debtor would.[50] We find the least sophisticated debtor could decide or not decide to choose Option 3 depending on whether Midland Credit would report as "Paid in Full" or "Paid in Full for less than the full balance."

12

Ms. Knight establishes Midland Credit violates Section 1692e as its letter would confuse the least sophisticated debtor as to when it will report the account as "Paid in Full" or "Paid in Full for less than the full balance."

### d. Midland Credit's letter would deceive the least sophisticated debtor as to the difference between the phrases "Paid in Full" and "Paid in Full for less than the full balance."

Ms. Knight argues the phrases "Paid in Full" and "Paid in Full for less than the full balance" are confusing because it is not clear to the least sophisticated debtor whether one status is better or more detrimental than the other. Midland Credit argues (1) the letter does not emphasize one statement over the other but simply identifies two statuses, (2) the Act does not require Midland Credit to educate a debtor about what each status means, (3) the difference between "Paid in Full" and "Paid in Full for less than the full balance" meant nothing to Ms. Knight.

Our Court of Appeals explained the phrase "Paid in Full for less than the full balance" could mislead the least sophisticated debtor:

> Both of the reporting statuses provided by the Letter—"Paid in Full" and "Paid in Full for less than the full balance"—use the phrase "Paid in Full" with the same capitalization, and the latter status has no other capitalized words. Because any payment is reported with the language "Paid in Full," the ramifications of each status are unclear. Without any other clarifying language, the least sophisticated debtor may read the two statuses together and believe that they have the same reporting consequences and that one is no better or worse than the other, which is inaccurate.[51]

Our Court of Appeals further explained the language could be material as the distinction between each status could induce the least sophisticated debtor to make a particular payment.

We agree with Ms. Knight the least sophisticated debtor would be confused as to the difference between the two statuses. Since Midland Credit uses the capitalized phrase "Paid in Full" for both statuses, the least sophisticated debtor would not understand the reporting distinction between "Paid in Full" and "Paid in Full for less than the full balance." The phrase "Paid in Full

13

for less than the full balance" is confusing and the least sophisticated debtor could read the phrase as self-contradictory. We believe the language would confuse the least sophisticated debtor as to the difference between "Paid in Full" and "Paid in Full for less than the full balance." We agree with our Court of Appeals' assessment the least sophisticated debtor could reasonably read these two statuses as having no meaningful difference.

We also find the ambiguity material. A debtor would be concerned about how a creditor would report its account. Understanding the distinction between these two statuses would likely influence how the debtor chooses to pay.

Midland Credit argues it does not emphasize one status over the other. But as our Court of Appeals explained, after "Paid in Full," Midland Credit does not include any capitalized words in the phrase "for less than the full balance." Because of the emphasis on "Paid in Full," the least sophisticated debtor would be confused as to the distinction between the two statuses.

Midland Credit argues it need not educate debtors as to the distinction between the statuses. We agree Congress does not affirmatively mandate a debt collector educate a debtor on the terms in a collection letter. But if a debt collector uses language which could confuse, mislead, or deceive the least sophisticated debtor, it may be liable under the Act. In such case, the debt collector may explain the language to prevent confusion.

Midland Credit also argues the difference between "Paid in Full" and "Paid in Full for less than the full balance" did not matter to Ms. Knight. But under the "least sophisticated debtor" standard, Ms. Knight need not prove materiality to her. She need only prove the least sophisticated debtor would find the language material.[52]

Midland Credit violates Section 1692e as its use of the terms "Paid in Full" and "Paid in Full for less than the full balance" would confuse the least sophisticated debtor.

14

**e.     We deny Midland Credit's motion for summary judgment on the language "We can't change the past, but we can help with the future."**

Midland Credit moves for summary judgment arguing the sentence "We can't change the past, but we can help with the future" does not violate Section 1692e. Ms. Knight does not move for summary judgment on this language but opposes Midland Credit's Motion. She argues the least sophisticated debtor would interpret this language in multiple ways: (1) paying the debt would improve her relationship with the creditor and (2) paying the debt would improve her credit score.

Our Court of Appeals explained "[i]t is not 'bizarre or idiosyncratic' for the least sophisticated debtor to read the language [Ms.] Knight identifies to mean that payment would not hurt a debtor's credit score and might even actually improve it."[53] The court further explained "a debtor who falsely believes that making payment on her debt would not hurt her credit score and might improve it could be induced to make the payment."[54]

Midland Credit argues it makes no promise to improve Ms. Knight's credit score, the letter does not mention "credit," and Ms. Knight's credit counselor testified the difference between "Paid in Full" and "Paid in Full for less than the full balance" has no impact on Ms. Knight's credit score. While this may be true, we believe the least sophisticated debtor could believe the sentence "We can't change the past, but we can help with the future" implies she could improve her credit score. As explained, Midland Credit discusses reporting in the July 20, 2016 letter. The least sophisticated debtor could believe since Midland Credit reports the account, its reporting would have a positive effect on her credit score. Midland Credit admits the sentence "We can't change the past, but we can help with the future" applies only to the discounts it offers in the letter and makes no promise of an improved credit score.[55] Thus, because the least sophisticated debtor could reasonably read

the letter in multiple ways, one of which is inaccurate, the letter is deceptive. It violates Section 1692e.

Midland Credit argues the least sophisticated debtor would not believe Midland Credit offers to improve her credit score because Ms. Knight's credit counselor testified the difference between "Paid in Full" and "Paid in Full for less than the full balance" has no impact on her credit score. But while a professional credit counselor knows this, we cannot say the least sophisticated debtor would understand this merely from reading the letter.

We deny Midland Credit's motion for summary judgment concerning the statement "We can't change the past, but we can help with the future."

In conclusion, we grant Ms. Knight's motion for summary judgment three elements of Midland Credit's letter violate Section 1692e of the Act: (1) the offer to "report" payment of her debt, (2) when Midland Credit will report her account as "Paid in Full" and "Paid in Full for less than the full balance," and (3) the difference between "Paid in Full" and "Paid in Full for less than the full balance." We deny Midland Credit's motion for summary judgment on the same elements and the additional element regarding the language "We can't change the past, but we can help with your future."

The grant of summary judgment to Ms. Knight on liability does not end the litigation. We must still determine damages under the Act.

**B.    We grant Ms. Knight's motion for class certification.**

Ms. Knight moves for class certification under Federal Rule of Civil Procedure 23. She alleges Midland Credit sent a standardized form letter containing the violating language to approximately 3,489 consumers in Philadelphia County with debts originating from Capital One Bank. She argues because the letters sent to the potential class members contain the same violative

16

language, common questions of law and fact dominate over questions pertaining only to individual class members.

To obtain class certification for her claims under the Act, Ms. Knight must show: (1) numerosity, "the class is so numerous that joinder of all members is impracticable;" (2) commonality, "there are questions of law or fact common to the class;" (3) typicality, "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and, (4) adequacy, "the representative parties will fairly and adequately protect the interests of the class."[56]

In addition to the four factors under Federal Rule of Civil Procedure 23(a), Ms. Knight must also show (1) the common questions of law and fact predominate over any questions affecting only individual members and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[57]

"The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence."[58] Ms. Knight must show "actual, not presumed" conformance with the Rule 23 requirements.[59] We must conduct a "rigorous analysis" of the evidence and proffered arguments to determine actual conformance.[60] We must also "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action."[61] We cannot certify a class because Ms. Knight "promises the class will be able to fulfill Rule 23's requirements, with the caveat that the class can always be decertified if it later proves wanting."[62]

### 1.    Ms. Knight sufficiently defines the class.

Ms. Knight must define the class and prove she is a member of the class. In her Second Amended Complaint, Ms. Knight defined the class:

> All consumers with a Pennsylvania address that have received collection letters from Defendant in substantially the same form as Exhibit "A" attached to the

Second Amended Complaint, concerning debts for Capital One Bank N.A. used primarily for personal, household, or family purposes within one year prior to the filing of this complaint..[63]

When moving for summary judgment, Ms. Knight narrowed the class to those in Philadelphia County:

All consumers with an address within Philadelphia County, Pennsylvania that have received collection letters from Defendant in substantially the same form as Exhibit "A" attached to the Second Amended Complaint, concerning debts for Capital One Bank N.A. used primarily for personal, household, or family purposes within one year prior to the filing of this complaint.[64]

Ms. Knight argues she limited the class definition to Philadelphia county to prevent a *de minimis* recovery for class members. She alleges there are tens of thousands of potential class members throughout Pennsylvania. Since Congress limited class action damages under the Act, Ms. Knight argues she can obtain a greater recovery for potential class members by limiting the class definition to consumers in Philadelphia County. We see no problem with Ms. Knight's class definition limited to consumers in Philadelphia County.

## 2. Ms. Knight satisfies the numerosity requirement.

Ms. Knight satisfies numerosity when "the class is so numerous that joinder of all members is impracticable."[65] "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."[66]

Midland Credit admits it "sent a letter substantially similar to the [July 20, 2016] Letter to approximately 3,489 debtors for collection purposes within Philadelphia County, Pennsylvania, concerning debts originating with Capital One Bank."[67] Midland Credit does not contest numerosity.

Ms. Knight satisfies the numerosity requirement.

### 3. Ms. Knight satisfies the commonality requirement.

To satisfy commonality, Ms. Knight must show she "share[s] at least one question of fact or law with the grievances of the prospective class."[68] "'[C]ourts in this district have previously conferred commonality on debt collection letter class action lawsuits,' as these lawsuits hinge upon standardized mailings of illegal form letters to members of the proposed class."[69]

Knight claims Midland Credit sent the same standardized form letter to all class members. She cites testimony from Midland Credit's corporate designee Jared McClure:

Q:    Okay. So let's go looking at—Let's start looking only at Exhibit B. Is Exhibit B a form template?

A:    Exhibit B is [the] actual letter sent to the plaintiff.

Q:    And is this a template letter that was sent or was this letter created specifically for the plaintiff in this matter?

A:    It would have been a form template.

Q:    Does this template have a specific name that's used to refer to this template?

A:    It does.

Q:    What is that name?

A:    M003.[70]

Midland Credit does not contest commonality. Since Midland Credit sent the same standardized letter to all potential class members, the class members received letters with the same allegedly violating language under the Act. Our determination as a matter of law the language would confuse the least sophisticated debtor applies equally to the potential class members. Ms. Knight satisfies the commonality requirement.

### 4. Ms. Knight satisfies the typicality requirement.

To satisfy the typicality requirement, Ms. Knight must show her claims and defenses are "typical of the claims or defenses of the class."[71] For class actions under the Fair Debt Collection Practices Act, ""typicality has been satisfied when the same debt collection letters are sent to many individuals."[72]

As explained, Ms. Knight established Midland Credit sent a standardized letter with the same violating language to the putative class members. Midland Credit does not contest typicality. Ms. Knight satisfies the typicality requirement.

### 5. Ms. Knight satisfies the adequacy requirement.

Ms. Knight argues she satisfies the adequacy requirement because she and the potential class members seek compensation for Midland Credit's violation of the Act. We look at two elements to determine adequacy: (1) "the experience and performance of class counsel" and (2) "the interests and incentives of the representative plaintiffs."[73] To determine adequacy of the representative plaintiff, we ask (1) whether "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously and (2) whether there is "conflict between the individual's claims and those asserted on behalf of the class."[74]

Ms. Knight argues she is willing to "vigorously pursue" claims under the Act on behalf of the potential class members.[75] She argues she has conferred and continues to confer with counsel to monitor litigation.[76] She argues her counsel is "well experienced in the very niche area of [Fair Debt Collection Practices Act] litigation" and has represented plaintiffs in over 400 cases under the Act throughout the country.[77]

Midland Credit argues Ms. Knight fails to satisfy the adequacy requirement because (1) she and her counsel arbitrarily limited the class definition to Philadelphia County debtors with

Capital One accounts and (2) she did not suffer the same injury as the class members because the debt collection letter did not confuse her personally and she had no intention of paying the debt. We disagree with Midland Credit.

### a. We reject Midland Credit's argument Ms. Knight fails to establish the adequacy requirement because she arbitrarily limited the class to circumvent the statutory cap on damages.

Midland Credit argues Ms. Knight and her counsel fail to satisfy the adequacy requirement because they arbitrarily gerrymandered the class definition to "circumvent the [the Act]'s cap on statutory damages."[78] By limiting the class to Philadelphia County consumers who received a version of Midland Credit's template letter—instead of Pennsylvania consumers statewide who received the template letter as defined in the Second Amended Complaint—Ms. Knight opens the possibility of "copycat" class action lawsuits in different counties throughout Pennsylvania complaining of the same violations in Midland Credit's template letter.

Ms. Knight is aware the individual recoveries will be less with a larger class under a damages cap. Congress set a cap for both individual and class action damages under the Fair Debt Collection Practices Act:

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector[.][79]

21

With "copycat" lawsuits in other Pennsylvania counties complaining of the same standardized letter, Ms. Knight's counsel could effectively extract more than "$500,000 or 1 per centum of [Midland Credit's] net worth" for the same violation. Midland Credit also argues in the absence of "copycat" lawsuits in other Pennsylvania counties, Ms. Knight abandons consumers outside Philadelphia who received the same template letter and leave them without recourse against Midland Credit.

Midland Credit cites several district court cases outside our circuit to support its argument Ms. Knight cannot narrow her class to a single county. In *Wenig v. Messerli & Kramer P.A.*, the plaintiff sued a debt collector alleging the form collection letter violated Section 1692g of the Act.[80] The plaintiff defined the class as consumers living in one county in Minnesota who received collection letters for a debt originally owed to Capital One Bank, totaling 1,000 to 2,000 consumers. The plaintiff admitted the defendant sent similar defective letters to consumers living all over Minnesota owing debts to a variety of creditors, totaling 30,000 consumers.

The United States District Court for the District of Minnesota denied class certification, finding the plaintiff's class definition made "little sense."[81] The court explained by limiting the class to consumers in one county owing debts to a single creditor, the plaintiff "gerrymandered the proposed class to evade the legislative cap on class damages found in § 1692k(a)(2)(B) and thereby increase each class member's potential recovery."[82]

Midland Credit also cites *Fariasantos v. Rosenberg & Associates, LLC*, where the plaintiff sued a debt collector alleging the form collection letter violated Section 1692g.[83] Both the plaintiff and debt collector moved for class certification. The defendant defined the class as consumers across Virginia who received the form letter, while the plaintiff limited the class to consumers in one Virginia county.[84]

22

The United States District Court for the Eastern District of Virginia certified the debt collector defendant's proposed statewide class, rejecting the plaintiff's single-county class definition. The court, citing *Wenig*, explained if it certified the single-county class, affected consumers outside the county would have to bring county-by-county actions or simply not prosecute their claims. Thus, the county class would defeat the class action purpose of "avoiding multiple lawsuits."[85] The court believed counsel's representations it would not bring county-by-county class actions to avoid the statutory cap on damages. But the court found certification of the single-county class would "increase the possibility of multiple lawsuits" or, if no further class suits proceeded, would abandon the claims of Virginian consumers outside the single county.[86]

Midland Credit also cites *Guevarra v. Progressive Financial Services, Inc.*[87] The plaintiff in *Guevarra* initially defined the class as all consumers receiving the defective collection letter, but later limited the class only to consumers originally indebted to IKEA.[88] The court explained, Congress provided a statutory damage cap in the Act for each class action, not for all class actions against a single debt collector based on the same form collection letter.[89] Thus, consumers could achieve damages beyond the statutory maximum for class actions by dividing up the class based on the original creditor to whom consumers owed the debt. The court found the plaintiff's counsel "divided up the class in order to maximize attorney fees without significant benefit to their clients."[90] Counsel admitted he coordinated with counsel in a "copycat" lawsuit to divide the class between IKEA consumers and non-IKEA consumers.[91] The court declined to refer the attorney to the disciplinary board explaining Congress left open the possibility of multiple lawsuits with the statutory language and Congress must remedy the problem.[92]

Ms. Knight argues because the statute of limitations for the template letter in this case expired, we should not concern ourselves with any "copycat" class actions filed outside

23

Philadelphia County concerning this particular letter.[93] While Midland Credit cites to the *Lance* case in our court arguing Ms. Knight's counsel has decided to split up class actions, Ms. Knight argues *Lance* arises from a different collection letter.[94]

Ms. Knight primarily argues no binding authority mandates she draw her class as broadly as possible. She cites *Mace v. Van Ru Credit Corp.* to support her argument.[95] The plaintiff in *Mace* brought a class action under the Act on behalf of all Wisconsin consumers who received the defendant debt collector's violating collection letter. The district court denied the plaintiff's statewide class, explaining because Congress included a statutory damages cap in the Fair Debt Collection Practices Act, the plaintiff must proceed with the broadest class possible—a nationwide class of consumers who received the violating letter. The district court further explained "the damage cap was intended to place a limit on total liability, and . . . allowing state-by-state suits to proceed would nullify the damage cap."[96] The district court then reasoned because a nationwide class would result in a *de minimis* recovery due to the cap, the class action mechanism "was 'not a superior method of adjudication.'"[97]

The Court of Appeals for the Seventh Circuit reversed the district court's denial of class certification. The court explained it found "no authority requiring the participation of the broadest possible class."[98] The court then compared the Fair Debt Collection Practices Act damage cap with the cap in the Truth in Lending Act. In the Lending Act, Congress provided "the total recovery . . . in any class action **or series of class actions arising out of the same failure to comply by the same creditor** shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor."[99]

The court explained the Fair Debt Collections Practices Act, while containing a nearly identical statutory damages cap provision, did not contain the "series of class actions" language.

The court explained while the statutes are related, Congress enacted the Fair Debt Collection Practices Act with the unique purpose to "curb[] abusive debt collection practices."[100] The Court of Appeals acknowledged the district court's concern a state-wide class may lead to multiple state-wide classes in an attempt to circumvent the damages cap. But the court felt satisfied the one-year statute of limitation in the Fair Debt Collection Practices Act would make multiple lawsuits difficult.

The court of appeals also explained requiring a nationwide class would result in a smaller recovery for the individual class members. The court calculated the debt collector's net worth as $11 million, limiting class recovery under the damages cap to approximately $100,000. While approximately 8,340 Wisconsin consumers received the violating collections letters, the district court estimated a nationwide class of 400,000 consumers. Thus, with a Wisconsin class, each consumer would receive a maximum twelve dollars, while consumers for a nationwide class would each receive twenty-eight cents.[101]

Ms. Knight also cites *O'Dell v. National Recovery Agency*, where Judge Smith in our District agreed with the Court of Appeals for the Seventh Circuit.[102] In *O'Dell*, the plaintiff sued a debt collector under the Act. The plaintiff limited the class to a single zip code in Pennsylvania. The debt collector argued against class certification, explaining because the plaintiff limited the class to a single Pennsylvania zip code, she failed to adequately protect the rights and interest of the approximately 63,000 Pennsylvania consumers outside the zip code who received similar violating letters.[103] Acknowledging our Court of Appeals has not yet determined whether Congress prohibits multiple class actions under the Act, Judge Smith rejected the debt collector's argument explaining the statutory language "does not cabin the number of class actions that can be pursued or prohibit the use of geographical limitations in the definition of the class."[104]

Ms. Knight also cites *Dinaples v. MRS BPO, LLC*. In *Dinaples*, the plaintiff sued under the Act and limited her class to a single county in Pennsylvania.[105] Judge Ponsor, sitting by designation in the District Court for the Western District of Pennsylvania, certified the single-county class.[106] Although the plaintiff could have drawn the class to include Pennsylvania residents generally, he found the single-county class "[made] sense from the point of view of the class members."[107] Because of the statutory damages cap, Judge Ponsor explained "a class consisting of all affected residents of Pennsylvania would result in a miniscule recovery for each class member."[108] Judge Ponsor found counsel's attempt to increase the potential individual recovery amount for class members "laudable."[109]

We find no binding authority requiring Ms. Knight define her class in the broadest terms. Doing so would limit the recovery of the potential class members. While Midland Credit argues we should concern ourselves with potential "copycat" lawsuits, its corporate designee testified Midland Credit stopped using the template letter at issue here in November 2016.[110] Ms. Knight filed her initial complaint on July 13, 2017. We have no information about current "copycat" lawsuits involving the template letter in this case. With respect to counsel's lawsuit *Lance v. Midland Credit Management, Inc.* in our court, Ms. Knight argues her counsel in *Lance* sues over a different letter. We agree.

We understand since she limits her class to a single county, Ms. Knight seemingly abandons the interests of consumers outside Philadelphia who received Midland Credit's template letter. But such a concern does not negate a finding of adequacy. Ms. Knight proves she vigorously pursues the claims of the class she defined. We do not ask whether she advances the interests of consumers outside her class.

26

While we acknowledge the district courts in *Wenig*, *Fariasantos*, and *Gueverra* denied similar attempts by a plaintiff to limit a Fair Debt Collection Practices Act class to a single county, we do not similarly read the Act or Rule 23 as requiring Ms. Knight define her class as broadly as possible. As shown in the Lending Act, Congress could have prevented possible copycat class actions by adding the "series of class actions arising out of the same failure to comply by the same creditor" language to the Debt Collection Act's damage cap provision. But it did not. In fact, because Ms. Knight limited the size of the class to maximize the potential individual recovery for class members, we find her adequate to represent the class. We also note although Congress provided a damage cap, the mere existence of a class action does not guarantee the plaintiff the statutory maximum. Midland Credit speculates because Ms. Knight brings a class action on behalf of Philadelphia County residents, she will attain the statutory maximum for her class and subsequent "copycat" classes will also attain the statutory maximum, thus circumventing the statutory cap. We will not deny Ms. Knight class certification based on this speculation.

### b. We reject Midland Credit's argument Ms. Knight fails to establish adequacy because she had no intention of paying her debt.

Midland Credit also argues Ms. Knight fails to satisfy the adequacy requirement because she, unlike the putative class members, had no intention of paying her debt. Thus, Midland Credit argues she fails to prove she "possess[es] the same interest" and "suffer[s] the same injury as the class members."[111] Ms. Knight argues she does have the same interest in recovering damages as the putative class for Midland Credit's deceptive letter.

In *Pollak v. Portfolio Recovery Associates, LLC*, the plaintiff sued a debt collector alleging its collection letter threatened suit in violation of the Act. In some instances, the debt collector filed suit against putative class members. Judge Martinotti in the District of New Jersey explained

27

the adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent."[112] He explained a plaintiff is "adequate" if "his interests do not conflict with those of the class."[113] Judge Martinotti found although the debt collector sued some of the putative class members—but not the named plaintiff—the court found the plaintiff adequate because he had "no interests that [were] antagonistic to those of the members of the proposed class and [had] no unique defenses from the proposed class."[114]

Ms. Knight satisfies the adequacy requirement. She received the same language in her July 20, 2016 letter sent to the putative class members. We ask whether Ms. Knight's interests conflict with the Class she hopes to represent. Ms. Knight, like the putative class members, seeks to recover damages for Midland Credit's letter under the Act. Her interests do not conflict with the Class members. We do not disqualify Ms. Knight because she did not intend to pay her debt.

Midland Credit argues because Ms. Knight consulted with a credit counselor who told her not to pay her debt, the allegedly defective elements of Midland Credit's letter were "completely inconsequential to [Ms. Knight]'s decision-making process" and "did not even pose a risk that [Ms. Knight] may be materially deceived or misled."[115] Midland Credit thus argues Ms. Knight fails adequacy. But Midland Credit ignores one of the purposes of the Act. As our Court of Appeals explained, Congress "enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others."[116] Congress encourages sophisticated consumers like Ms. Knight to sue under the Act on behalf of less sophisticated consumers. Ms. Knight is not only adequate but she is the type of plaintiff Congress envisioned to enforce the Act.

### 6. Ms. Knight satisfies the superiority requirement.

Ms. Knight argues she satisfies the superiority requirement because a class action is superior to nearly 3,500 separate individual actions against Midland Credit for the defective letter. She argues because Congress caps individual recovery under the Act at $1,000, consumers are unlikely to bring private actions.

Under Rule 23(b)(3), we ask whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[117]

Midland Credit's argument against superiority is the same as its adequacy argument: Ms. Knight arbitrarily gerrymandered the class definition and such class is inferior to a statewide class. Ms. Knight argues to determine superiority, we ask whether a class action is superior to individual actions, not whether a larger class definition is superior to a smaller class. We agree with Ms. Knight.

As explained, neither the Fair Debt Collection Practices Act nor Rule 23 require Ms. Knight to broaden the size of her class. Under the superiority requirement, we ask whether the class action mechanism is superior to individual claims, not whether the broadest class definition is superior to a more limited definition. As explained, district courts in our circuit rejected the argument a plaintiff must define the class as broadly as possible. In *O'Dell*, the defendant debt collector argued a class limited to one zip code is inferior to a state-wide class. Judge Smith in our district rejected the argument a decision to limit the class to one zip code cuts against a finding of superiority.[118] He explained the text of the statute "does not cabin the number of class actions that can be pursued or prohibit the use of geographical limitations in the definition of the class."[119]

We believe a class action is superior to other available methods of adjudicating the controversy. Our colleague Judge Pratter explained Congress considers the class action

mechanism a desirable and efficient means of enforcing the Fair Debt Collection Practices Act. She explained since Congress capped damages for individual actions at $1,000, "it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action."[120] Thus, Congress added a class action damages scheme in the Act and included "fee-shifting" to "deputize private attorneys general" to enforce the Act.[121]

Midland Credit admits it sent a version of the form template letter to over three thousand consumers in Philadelphia County, Pennsylvania. It is unlikely consumers will bring individual actions seeking a remedy for Midland Credit's allegedly defective letter. A class action is superior to individual claims. Neither the text of the statute nor any binding authority in our circuit requires Ms. Knight define her class as broadly as possible.

Ms. Knight satisfies the superiority requirement.

### 7. Ms. Knight satisfies the predominance requirement.

Ms. Knight argues she satisfies the predominance requirement because the common legal question of whether Midland Credit's letter violates the Act predominates in this lawsuit.

To determine predominance, we ask whether "questions of law or fact common to class members predominate over any questions affecting only individual members[.]"[122] Predominance is satisfied when "a defendant has engaged in a uniform pattern of activity, and each class member will have to prove essentially the same facts concerning the defendants' actions[.]"[123]

One legal question dominates: whether the common elements of Midland Credit's form template letter violates Section 1692(e) of the Fair Debt Collection Practices Act. Class members need only prove they received the allegedly violating letter from Midland Credit and owed a "debt" as defined in the Act. Midland Credit does not contest predominance.

Ms. Knight satisfies the predominance requirement.

## III. Conclusion.

In an accompanying Order, we grant Ms. Knight's partial Motion for summary judgment on liability under the Act. We deny Midland Credit's Motion for summary judgment. The parties shall now proceed into evaluating the damages available for this claim.

In a separate Order, we grant Ms. Knight's Motion for class certification.

---

[1] Our Policies and Procedures require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Midland Credit filed its SUMF at ECF Doc. No. 45-1, its memorandum in support of summary judgment at ECF Doc. No. 45-2, and its appendix at ECF Docs. No. 45-4 through 45-12. Ms. Knight filed her SUMF at ECF Doc. No. 43-2, her memorandum in support of summary judgment at ECF Doc. No. 43-1, and a supplemental appendix at ECF Doc. No. 47. Midland Credit filed it opposition brief to Ms. Knight's Motion at ECF Doc. No. 52 and its response SUMF at ECF Doc. No. 52-1. Ms. Knight filed her opposition brief to Midland Credit's Motion at ECF Doc. No. 50, her response SUMF at ECF Doc. No. 50-1, and a supplemental appendix at ECF Docs. No. 50-2 through 50-8. Midland Credit filed its Reply to Ms. Knight's opposition at ECF Doc. No. 54. Ms. Knight filed her Reply at ECF Doc. No. 56 and a supplemental appendix at ECF Docs. No. 56-1 through 56-3. We cite to the appendix referencing the Bates number (e.g. App. 1).

[2] ECF Doc. No. 56-3 (Knight Suppl. App.) at 125.

[3] ECF Doc. No. 47-3 (Knight Suppl. App.) at 82.

[4] *Id.*

[5] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for

which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[6] Ms. Knight filed her Second Amended Complaint on October 12, 2017. ECF Doc. No. 22. Midland Credit moved to dismiss. ECF Doc. No. 24. On November 8, 2017, we dismissed Ms. Knight's Second Amended Complaint for failure to state a claim. ECF Doc. No. 27. Ms. Knight appealed our dismissal. ECF Doc. No. 29. On November 30, 2018, our Court of Appeals vacated our dismissal order and remanded the case. ECF Doc. No. 31.

[7] *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

[8] 15 U.S.C. § 1692a(5).

[9] ECF Doc. No. 43-2 (Knight SUMF) ¶ 1.

[10] ECF Doc. No. 47-3 (Knight Suppl. App.) at 82.

[11] ECF Doc. No. 43-3.

[12] ECF Doc. No. 47-5 (Knight Suppl. App.) at 94.

[13] *Id.*

[14] ECF Doc. No. 56-3 (Knight Suppl. App.) at 125.

[15] *Id.*

[16] *Alston v. Forsyth*, 379 Fed. App'x 126, 129 (3d Cir. 2010).

[17] ECF Doc. No. 56, at p. 5.

[18] 15 U.S.C. § 1692e.

[19] *Id.* § 1692e(10).

[20] *Knight v. Midland Credit Mgmt. Inc.*, 755 Fed. App'x 170, 174 (3d Cir. 2018) (quoting *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 149 (3d Cir. 2013)).

[21] *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 427 (3d Cir. 2018) (quoting *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008)).

[22] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006).

[23] *Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015) (citing *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) "[T]he FDCPA does not require that a plaintiff actually be confused.")).

[24] *Knight*, 755 Fed. App'x at 174 (citing *Jensen*, 791 F.3d at 419-20).

[25] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 222 (3d Cir. 2008) (citing *Brown*, 464 F.3d at 455).

[26] *Simon v. FIA Card Servs. NA*, 639 Fed. App'x 885, 888 (3d Cir. 2016).

[27] *Jensen v. Pressler & Pressler*, 791 F.3d 413, 422 (3d Cir. 2015).

[28] *Id.* at 419.

[29] *Balon v. Enhanced Recovery Co., Inc.*, 264 F. Supp. 3d 597, 616 (M.D. Pa. 2017) (quoting *Jensen*, 791 F.3d at 419).

[30] ECF Doc. No. 43-1, at p. 11.

[31] ECF Doc. No. 47-3 (Knight Suppl. App.) at 82.

[32] *Knight*, 755 Fed. App'x at 175.

[33] *Id.*

[34] ECF Doc. No. 45-2, at p. 8.

[35] *Id.* at p. 7.

[36] ECF Doc. No. 52, at p. 11.

[37] *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057 (7th Cir. 2000).

[38] *Id.* at 1058-59.

[39] *Id.* at 1061.

[40] *Id.* at 1060.

[41] *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999).

[42] *Jensen*, 791 F.3d at 424 ("We have noted that whether contradictory language in a notice would 'confuse or mislead the "least sophisticated debtor" as to his statutory rights under [the Act] to validate and dispute the debt' is a question of law."); *Balon*, 264 F. Supp. 3d at 614 (explaining whether defendant violated Section 1692e is a question of law); *Santiago v. A.R. Res., Inc.*, No. 14-4240, 2015 WL 851818, at *3 (E.D. Pa. Feb. 26, 2015) ("I find that I may determine as a matter

of law whether, applying the least sophisticated consumer standard, defendant's letter was deceptive under § 1692e."); *Womack v. Nat'l Action Fin. Servs.*, No. 06-4935, 2007 WL 2155669, at *3 (E.D. Pa. July 25, 2007) ("[A]pplication of the least sophisticated consumer standard to § 1692e is a question of law.").

[43] ECF Doc. No. 45-2, at p. 8.

[44] ECF Doc. No. 37 (Midland Credit's Answer to the Second Amended Complaint) ¶ 19 ("[Midland Credit] admits that the [Midland Credit] Letter plainly provides that Option 3 is a route to full payment where the consumer is provided the option to pay $50 up until the full debt is paid.").

[45] *Knight*, 755 Fed. App'x at 176.

[46] *Id.*

[47] ECF Doc. No. 47-3 (Knight Suppl. App.) at 82.

[48] ECF Doc. No. 37 ¶ 19 ("[Midland Credit] admits that the [Midland Credit] Letter plainly provides that Option 3 is a route to full payment where the consumer is provided the option to pay $50 up until the full debt is paid.").

[49] ECF Doc. No. 52, at p. 15.

[50] *Jensen*, 791 F.3d at 421 ("[A] statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor.").

[51] *Knight*, 755 Fed. App'x at 176.

[52] *Jensen*, 791 F.3d at 421 ("[A] statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor.").

[53] *Knight*, 755 Fed. App'x at 175.

[54] *Id.*

[55] ECF Doc. No. 45-2, at p. 15.

[56] Fed. R. Civ. P. 23(a)(1)-(4).

[57] Fed. R. Civ. P. 23(b)(3).

[58] *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

[59] *Id.* (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 322 (3d Cir. 2008)).

[60] *Id.*

[61] *Id.*

[62] *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013) (explaining such conditional certification is not permitted under Rule 23).

[63] ECF Doc. No. 22.

[64] ECF Doc. No. 42-1, at p. 3.

[65] Fed. R. Civ. P. 23(a)(1).

[66] *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249-50 (3d Cir. 2016), *as amended* (Sept. 29, 2016).

[67] ECF Doc. No. 42-5 (Midland Credit's Response to Request For Admission No. 11).

[68] *Harlan v. Transworld Sys., Inc.*, 302 F.R.D. 319, 328 (E.D. Pa. 2014) (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)).

[69] *Jordan v. Commonwealth Fin. Sys., Inc.*, 237 F.R.D. 132, 137 (E.D. Pa. 2006).

[70] ECF Doc. No. 42-7 (N.T. J. McClure, Feb. 13, 2019).

[71] Fed. R. Civ. P. 23(a)(3).

[72] *Hovermale v. Immediate Credit Recovery, Inc.*, No. 15-05646, 2018 WL 6322614, at *7 (D.N.J. Dec. 4, 2018).

[73] *Gibbons v. Weltman, Weinberg & Reis Co., LPA*, No. 17-1851, 2018 WL 5720749, at *6 (E.D. Pa. Oct. 31, 2018) (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012)).

[74] *Kassin v. AR Res., Inc.*, No. 16-4171, 2018 WL 6567703, at *11 (D.N.J. Dec. 13, 2018) (quoting *Larson v. AT & T Mobility LLC*, 687 F.3d 109, 132 (3d Cir. 2012)).

[75] ECF Doc. No. 42-1, at p. 13.

[76] *Id.* at p. 14.

[77] *Id.* at p. 15.

[78] ECF Doc. No. 51, at p. 6.

[79] 15 U.S.C. § 1692k.

[80] *Wenig v. Messerli & Kramer P.A.*, No. 11-3547, 2013 WL 1176062 (D. Minn. Mar. 21, 2013).

[81] *Id.* at *5.

[82] *Id.* at *6.

[83] *Fariasantos v. Rosenberg & Assocs., LLC*, 303 F.R.D. 272, 277 (E.D. Va. 2014).

[84] *Id.* at 274.

[85] *Id.* at 277.

[86] *Id.* at 278.

[87] *Guevarra v. Progressive Fin. Servs., Inc.*, 497 F. Supp. 2d 1090 (N.D. Cal. 2007).

[88] *Id.* at 1091.

[89] *Id.* at 1092.

[90] *Id.* at 1091.

[91] *Id.*

[92] *Id.* at 1092-93 (finding the statutory language in the Act creates "mis-incentives" but explaining "any remedy to this situation lies with Congress").

[93] ECF Doc. No. 55-4 (N.T. J. McClure, Feb. 13, 2019).

[94] *Lance v. Midland Credit Management, Inc.*, No. 18-4933 (E.D. Pa.).

[95] *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997).

[96] *Id.* at 342.

[97] *Id.*

[98] *Id.* at 341.

[99] *Id.* at 342 (quoting 15 U.S.C. § 1640(a)(2)(B)).

[100] *Id.* at 343.

[101] *Id.*

[102] *O'Dell v. Nat'l Recovery Agency*, 291 F. Supp. 3d 687 (E.D. Pa. 2018).

[103] *Id.* at 704-05.

[104] *Id.* at 705.

[105] *Dinaples v. MRS BPO, LLC*, No. 15-01435, 2017 WL 5593471 (W.D. Pa. Nov. 21, 2017).

[106] *Id.* at *4.

[107] *Id.*

[108] *Id.*

[109] *Id.*

[110] ECF Doc. No. 55-4 (N.T. J. McClure, Feb. 13, 2019).

[111] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

[112] *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 844 (D.N.J. 2018).

[113] *Id.*

[114] *Id.*

[115] ECF Doc. No. 51, at p. 14.

[116] *Jensen*, 791 F.3d at 419 (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008)).

[117] Fed. R. Civ. P. 23(b)(3).

[118] *O'Dell v. Nat'l Recovery Agency*, 291 F. Supp. 3d 687, 704-05 (E.D. Pa. 2018).

[119] *Id.* at 705.

[120] *Harlan v. Transworld Sys., Inc.*, 302 F.R.D. 319, 330 (E.D. Pa. 2014).

[121] *Id.*

[122] Fed. R. Civ. P. 23(b)(3).

[123] *Delandro v. Cty. of Allegheny*, No. 06-927, 2008 WL 11381924, at *4 (W.D. Pa. June 18, 2008).